**2014 BNH 004**     Note:   This is an unreported opinion. Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                         Bk. No. 13-11823-BAH
                                                                                                Chapter 11
In re Lakes Region Donuts, LLC,
        Debtor

*Brian Barrington, Esq.*
*The Coolidge Law Firm, PLLC*
*Somersworth, New Hampshire*
*Attorney for Debtor*

*Patrick O. Collins, Esq.*
*Hoefle, Phoenix, Gormley & Roberts, P.A.*
*Portsmouth, New Hampshire*
*Attorney for Creditor Farmington Donuts, LLC*

## MEMORANDUM OPINION

### I. INTRODUCTION

Before the Court is the Motion for Relief from Stay (Doc. No. 17) (the "Motion") filed by Creditor Farmington Donuts, LLC ("Farmington"). Debtor Lakes Region Donuts, LLC (the "Debtor") leased commercial property from Farmington. Prepetition, the Debtor defaulted under the terms of a lease between the parties by failing to pay rent. Farmington initiated a possessory action against the Debtor under state law, and a writ of possession issued. Prior to the Debtor vacating the property, the Debtor filed bankruptcy. Farmington seeks relief from the automatic stay in order to enforce the writ of possession and evict the Debtor under New Hampshire law.

The Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New

Hampshire Local Rule 77.4(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS[1]  AND PROCEDURAL HISTORY

On January 5, 2010, the Debtor entered into an agreement with Farmington to acquire a Honey Dew Donut franchise, including all of the restaurant equipment, for $260,000.00. On the same date, the Debtor and Farmington executed a commercial lease for an initial term starting February 2, 2010, and ending November 9, 2014 (the "Lease"). Agreed Partial Statement of Facts ¶¶ 1-2 (hereinafter "Stmt. of Facts"); see also Exs. 101 & 102. The Debtor had the option to extend the Lease term for up to three additional five-year terms. Lease, Ex. 102 § 2.1.

The Lease provides that the premises will be used only as a donut and coffee shop and that the monthly rent is $3,500.00. Id. §§ 3, 6 & Sched. A. Under the terms of the Lease, Farmington is obligated to provide the use of the premises during the lease term; to provide the quiet enjoyment of the premises; to maintain and repair the exterior of the building and the underground utility, water, and sewer pipes outside the exterior walls; to restore the premises to a condition suitable to their intended use within one hundred days of a fire, casualty, or taking; and to refrain from construction that would interfere with the use of the outside space and parking lot. Id. §§ 1, 14, 19, 26. The terms of the Lease provide that the Debtor is obligated to pay minimum base rent timely, with a grace period of fifteen days; to pay for all expenses associated

---

[1]  The following facts were agreed upon by the parties and are taken directly from the stipulated record and exhibits submitted to the Court as part of the record of the evidentiary hearing conducted October 10, 2013.

with the premises including taxes, building and business insurance, all utilities, and other fees; to allow Farmington access to the property at reasonable times; to remediate hazardous material issues; to indemnify and hold harmless Farmington; to purchase and maintain public liability insurance; to vacate and surrender the property at the expiration or other termination of the Lease; to maintain the premises during the Lease term; and to complete the Honey Dew franchisee corporate training program. Id. §§ 3, 4, 5, 7, 10, 11, 12, 13, 18, 26.

The Lease provides that if there is any default in the payment of rent, and the default is not cured within a fifteen day grace period, or if there is any default in the performance of any other duty of the Debtor under the Lease not corrected within thirty days, then Farmington has the right "to reenter and take complete possession of the leased premises, to declare the term of this Lease ended, and all rights of the LESSEE under this Lease shall cease . . . ." Id. § 15. It continues:

> In the event of any breach or threatened breach by LESSEE of any of the agreements, terms, covenants or conditions contained in this Lease, LESSOR shall be entitled to enjoin such breach or threatened breach and shall have the right to invoke any right or remedy allowed at law or in equity or by statute or otherwise as though reentry, summary proceedings, and other remedies were not provided for in this Lease.
>
> The LESSOR shall have the right thereafter, while such default continues, to re-enter and take complete possession of the Leased Premises, to declare the terms of this lease ended, and remove the LESSEE'S effects, without prejudice to any remedies which might be otherwise used for arrears of rent or other default. All past and future rent shall accelerate and become immediately due and payable, and the LESSEE shall indemnify the LESSOR against all loss of rent and other payments which the LESSOR may incur by reason of such termination during the residue of the term. . . .
>
> Each right and remedy of LESSOR provided for in this Lease shall be cumulative and shall be in addition to every other right or remedy provided for in this Lease not now or hereafter existing at law or in equity or by statute or otherwise, and the exercise or beginning of the exercise by LESSOR of any one or more of the rights or remedies provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by LESSOR of any

or all other rights or remedies provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise.

Id. The Lease's terms provide that it is to be governed by and interpreted in accordance with the laws of New Hampshire. Id. § 23.

On October 11, 2012, Farmington served the Debtor with a Demand for Rent and an Eviction Notice for failure to pay the full rental amount due. Stmt. of Facts ¶ 4; Exs. 103 & 104. The Demand for Rent states that "[d]emand is hereby made for payment of overdue rent . . . . The amount of said overdue rent to date is $12,714.51 and the amount of unpaid late fees is $500.00, for a total amount owed of $13,214.51." Ex. 103. The Eviction Notice states:

> Pursuant to the provisions of NH RSA 540:2 you are hereby given notice to quit, on or before October 19, 2012 the premises and appurtenances owned by Farmington Donuts LLC and identified as 471 NH Route 11, Farmington, New Hampshire which premises are now occupied by you. . . . You are hereby notified of your right to avoid this eviction by payment, prior to the expiration date of this eviction notice [October 19, 2012], of all the arrearages plus fifteen dollars ($15.00) as liquidated damages, in accordance with NH RSA 540:9. However, a tenant may not defeat an eviction for non-payment of rent by use of NH RSA 540:9 more than three (3) times in a 12-month period.

Ex. 104. The Debtor failed to "avoid this eviction" by making payment prior to the expiration date in the Eviction Notice. Ex. 105.

Thereafter, Farmington filed an eviction action in state court in the 7th Circuit District Division – Rochester (the "Circuit Court") seeking possession of the property and monetary damages, and the Circuit Court held a hearing on the merits on January 30, 2013. Stmt. of Facts ¶ 5; Ex. 105. On January 31, 2013, the Circuit Court rendered judgment in favor of Farmington (the "Judgment"). Stmt. of Facts ¶ 6; Ex. 105. The Judgment recites that Farmington "duly served the [Debtor] with a Demand for Rent [$13,214.51] and an Eviction Notice on October 11, 2012 with a 'payment due date' of October 19, 2012," that the "demand

4

was not paid on or before the 'payment due date,'" and that the Debtor presented no valid defense. Ex. 105 (brackets in original). The Judgment awarded Farmington the amount of $1,500.00 (the maximum amount available under Rule 5.8 of the Circuit Court's Rules and RSA 540:13(III)), and further ordered that a writ of possession was to issue on the eighth calendar day from the date of the written notice of the decision. Id.

On February 6, 2013, the Circuit Court denied the Debtor's motion to reconsider the Judgment. Stmt. of Facts ¶¶ 10, 11; Ex. 109. The Debtor then appealed the Judgment to the New Hampshire Supreme Court, which declined to hear the appeal on May 9, 2013. Stmt. of Facts ¶¶ 7, 12; Exs. 106 & 110. On June 6, 2013, the Supreme Court denied the Debtor's motion for reconsideration of that declination, as well. Stmt. of Facts ¶ 12; Exs. 111 & 112.

The Circuit Court issued a Writ of Possession on June 11, 2013. Stmt. of Facts ¶ 13; Ex. 113. On the morning of July 19, 2013, a Strafford County deputy sheriff served the Writ of Possession on the Debtor's manager. Stmt. of Facts ¶ 14; Ex. 114. The Strafford County Sheriff's Office has a practice of serving a writ of possession and allowing the tenant forty-eight hours to voluntarily vacate the premises before being forcibly evicted. Stmt. of Facts ¶ 15; Ex. 115. Hours after the deputy sheriff served the Writ of Possession, the Debtor filed a petition for chapter 11 relief. Doc. No. 1. The Debtor remains in possession of the premises.

Farmington filed its Motion for Relief seeking to enforce the Writ of Possession and evict the Debtor from the premises. Farmington contends that the exception set forth in 11 U.S.C. § 362(b)(10) applies, and therefore it need not obtain relief from the automatic stay of 11 U.S.C. § 362(a). In Farmington's view, the Debtor's interest in the Lease is not property of the estate under 11 U.S.C. § 541(b)(2), and the Lease is not capable of being assumed by virtue of 11

5

U.S.C. § 365(c)(3).  In the Motion, Farmington argues that once the Circuit Court entered the Judgment against the Debtor and the Debtor exhausted its appellate rights, the Lease, and any rights of the Debtor with respect to the Lease, terminated on June 11, 2013, when the Writ of Possession issued.  Mot. ¶ 15.  The Debtor objects, arguing that its tenancy has not been terminated because it filed a chapter 11 petition before the "completion of the eviction process under RSA 540:14."  Obj. ¶ 2.  The Debtor also contends that the Court should rule consistently with In re Beeman, 235 B.R. 519 (Bankr. D.N.H. 1999), and use "its general equitable powers" to find that an eviction for "a minor violation of a 20-year lease" is inequitable.  Id. ¶¶ 4-5.

The Court held an evidentiary hearing on October 10, 2013.  At the hearing, the parties submitted the Agreed Partial Statement of Facts and Exhibits.  The Court heard testimony from John Leach, the Debtor's principal, and Christine Oldberg, the Debtor's manager who was present at the time the deputy sheriff served the Writ of Possession.  At the hearing, the Court took the Motion under advisement and ordered the parties to file supplemental memoranda of law on (1) when a lease effectively terminates under New Hampshire law, and (2) whether the Lease in this case effectively terminated prepetition.  In its supplemental memorandum of law, Farmington contends that the Debtor's "tenancy" and the Lease were actually terminated on October 19, 2012 (not June 11, 2013), when the Debtor failed to timely cure and voluntarily vacate the premises, thereby losing its right to possession.  Doc. No. 53 ¶ 9.  In its supplemental memorandum of law, the Debtor contends that neither the tenancy nor the Lease have terminated as the Debtor has not been physically removed from the premises, no provision

6

of state law has terminated the Lease, and Farmington has not taken steps to terminate in accordance with § 15 of the Lease.   Doc. No. 51.

## III.   DISCUSSION

Several sections of the Bankruptcy Code "evidence Congress' intent that lessors of nonresidential real property are entitled to significant safeguards" of their interests.   In re Memphis-Friday's Assocs., 88 B.R. 830, 833-34 (Bankr. W.D. Tenn. 1988).   Courts have identified §§ 362(b)(10), 541(b)(2), and 365(c)(3)—all of which were added by the 1984 amendments to the Bankruptcy Code—as specifically protecting the interests of commercial lessors.

Section 362(a) generally provides an automatic stay of actions against the debtor. However, § 362(b)(10) specifically excludes from the stay "any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property."   11 U.S.C. § 362(b)(10); see In re T.A.C. Grp., 294 B.R. 199, 202 (Bankr. D. Mass. 2003) ("[T]he debtor's interest in a terminated lease is not protected by the automatic stay"); In re Neville, 118 B.R. 14, 18 (Bankr. E.D.N.Y. 1990) ("The language of Section 362(b)(10) clearly indicates that it is not necessary for a landlord to move in the Bankruptcy Court to vacate the automatic stay when the Debtor is operating under a lease of non-residential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title.").   Courts have interpreted the "terminated by the expiration of the stated term" language in § 362(b)(10) as not being limited simply to instances where the calendar date specified as the end of the lease term has passed.

Rather, the exception has been held to apply in instances where a lease has been effectively terminated under applicable nonbankruptcy law prior to the expiration of its stated term.  See In re Policy Realty Corp., 242 B.R. 121, 127-28 (S.D.N.Y. 1999) (holding that even where landlords have accelerated the lease term, the § 362(b)(10) exception to the automatic stay prevented the stay from applying); see also Robinson v. Chicago Hous. Auth., 54 F.3d 316, 320 (7th Cir. 1995) (explaining that the Bankruptcy Code "draw[s] no meaningful distinction between 'unexpired' and 'terminated'" in context of § 365).

Section 541 establishes what constitutes the property of the debtor's estate.  All of the debtor's property and interests in property at the time of filing the petition become part of the estate, with specific exceptions.  One exception is "any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case."  11 U.S.C. § 541(b)(2); see In re T.A.C. Grp., 295 B.R. at 202 ("A lease that has been terminated prior to the filing of a bankruptcy petition is not property of the estate . . . .").

Section 365 provides that the debtor may assume an unexpired lease.  However, § 365(c)(3) prohibits the assumption by the debtor if "such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief."  11 U.S.C. § 365(c)(3).  Once a lease has been terminated, the bankruptcy court cannot revive it, even by its equitable powers, despite the debtor's present ability to cure any default.  Neville, 118 B.R. at 18.  Concomitantly, where a debtor is unable to assume a lease pursuant to §

365(a), there is cause for relief from the automatic stay.  See C.O.P. Coal Dev. Co. v. C.W. Mining Co. (In re C.W. Mining Co.), 422 B.R. 746, 758-59 (B.A.P. 10th Cir. 2010); Rich-Taubman Assocs. v. Masterworks, Inc. (In re Masterworks, Inc.), 94 B.R. 262, 265 (Bankr. D. Conn. 1988) (stating that the debtor has the burden of proof to show that it could assume the lease); see also Memphis-Friday's, 88 B.R. at 843.  If the debtor cannot cure the default under the lease because the lease has been terminated, the lease cannot be assumed by the debtor.  As one court commented, "[a]lthough the reasoning . . . is not always explicit, courts appear to focus on a debtor's existing contractual right to cure and revive the contract, thus making termination incomplete and giving the debtor a sufficient interest in the contract to assume.  It follows that if there is an assumable lease under § 365 which is property of the estate, it is subject to the automatic stay provisions of § 362(a)."  C.W. Mining Co., 422 B.R. at 758-59 (footnote omitted).

The common inquiry to all three sections is whether the commercial lease was terminated prepetition under applicable nonbankruptcy law, i.e., the state law under which the lease is to be interpreted.  Robinson, 54 F.3d at 320 and n.1 (citing Butner v. U.S., 440 U.S. 48, 55 (1979)); see also C.W. Mining, 422 B.R. at 755 (looking to Utah law to interpret the terms of the contract); Pyramid Operating Auth., Inc. v. Memphis (In re Pyramid Operating Auth., Inc.), 144 B.R. 795, 809 (Bankr. W.D. Tenn. 1992) (looking to Tennessee contract law); Memphis-Friday's, 88 B.R. at 834 (same); Air Vectors Assocs. v. New York Dept. of Transp. (In re Air Vectors Assocs.), 53 B.R. 668, 685 (Bankr. S.D.N.Y 1985) (looking at New York contract law); accord In re Southcoast Express, Inc., 337 B.R. 739, 743 (Bankr. D. Mass. 2006) ("The cases from this circuit . . . favor looking to state law to determine when the lease was terminated

as opposed to looking at the end date of the lease.") (looking to Massachusetts contract law). In determining whether a lease was in effect as of the petition date, courts look to the terms of the lease itself, as interpreted by the governing state's law. In re Gateway Investors, Ltd., 113 B.R. 564, 567 (Bankr. D.N.D. 1990) (finding that the lease agreements "provide the circumstances and proper procedure for termination").

Accordingly, to rule on the Motion, the Court must determine whether, under the terms of the Lease as interpreted under New Hampshire law, the Lease was terminated by the time the Debtor's petition was filed. If the Lease terminated prepetition, then § 362(b)(10) is implicated and the automatic stay would not apply. Further, if the lease were terminated prepetition, the Debtor cannot revive its interests in the Lease in bankruptcy and assume it pursuant to § 365(c)(3); therefore, relief from the automatic stay, to the extent applicable, would be appropriate. The Court turns to New Hampshire landlord-tenant law to determine the status of the Lease as of the petition date.

### A. Termination of the Tenancy

In New Hampshire, RSA 540 provides a statutory framework for actions against tenants. RSA 540:2 is titled "Termination of Tenancy" and provides that "[t]he lessor or owner of nonrestricted [i.e., commercial] property may terminate any tenancy by giving to the tenant or occupant a notice in writing to quit the premises in accordance with RSA 540:3 and 5." RSA 540:2(I). RSA 540:5 sets forth the service requirements for any demand for rent or eviction notice.[2] RSA 540:3 describes the requirements of an eviction notice and provides that "[i]f the

---

2  The terms "notice to quit" and "eviction notice" appear to be used interchangeably in the statutes. See RSA 540:3(V) ("For the purpose of interpreting or enforcing any lease or rental agreement for residential tenants in effect on July 1, 2006, a notice to quit shall be deemed an eviction notice under this section."); Darbouze v. Champney, 160 N.H. 695, 697 (2010) (explaining that several statutes were

eviction notice is based on nonpayment of rent, then notice shall inform the tenant of his or her right, if any, to avoid the eviction by payment of the arrearages and liquidated damages in accordance with RSA 540:9."  RSA 540:3(IV).  RSA 540:9 permits a tenant to cure the nonpayment of rent if, before the expiration period stated in the notice to quit, the tenant "pays or tenders all arrearages plus $15.00 as liquidated damages . . . ."  RSA 540:9.  Absent such a cure, landlords may pursue a summary possessory action against the tenant in state court in order to recover possession of the real estate.

The New Hampshire Supreme Court has affirmed that the purpose of the summary possessory proceedings is to "permit the landlord to recover possession on termination of a lease without suffering the delay, loss and expense to which he may be subjected under a traditional common-law action."  Matte v. Shippee Auto, Inc., 152 N.H. 216, 218 (2005) (quoting Ossen v. Wanat, 585 A.2d 685, 687 (Conn. 1991), cert. denied, 502 U.S. 816 (1991)).  RSA 540:12 is titled "Possessory Action" and provides that "[t]he owner, lessor, or purchaser at a mortgage foreclosure sale of any tenement or real estate may recover possession thereof from a lessee, occupant, mortgagor, or other person in possession, holding it without right, after notice in writing to quit the same as herein prescribed."  RSA 540:12 (emphasis added).  To commence a summary possessory action, a summons is issued, returnable to the state court.  RSA 540:13(I).  Within ten days of a tenant's appearance, the state court must conduct a hearing on the merits.  RSA 540:13(V); see Flo-Pro Inc. v. 10 Iron Horse Drive, LLC, No. 11-CV-158-JL, 2011 WL 4527416 (D.N.H. Sept. 28, 2011).  If the landlord is successful in its possessory action, judgment enters against the tenant.  RSA 540:14(I).  The judgment will provide that the

---

amended in 2006 to replace the term "notice to quit" with "eviction notice" but noting that the statute does not require use of the term "eviction notice").

landlord may recover possession of the premises. Id. In addition, "[i]n cases based on nonpayment of rent, the court shall state the actual amount of the tenant's current weekly rent . . . which must be paid into the court if an appeal is taken. . . ." Id. A writ of possession will also issue. Id. The landlord has the discretion to enforce the judgment by directing the sheriff to serve the writ of possession or by seeking judicial relief for contempt. Id. "A writ of possession shall authorize the sheriff to remove the defendant from the premises." Id.

Under New Hampshire landlord-tenant law, as set forth in RSA 540, a landlord may terminate a tenant's tenancy by serving the tenant with an eviction notice. The statutory process contemplates that by the time that the cure period under a properly served eviction notice has expired, the lessee is holding the premises "without right," a predicate to commencement of a possessory action under the terms of RSA 540:12. Therefore, the commencement and completion of the eviction notice procedure under RSA 540 terminates the lessee's tenancy, and the lessee has no right to possess the leased premises upon the expiration of the cure period stated in the eviction notice. See Dover v. B C P Realty, 112 N.H. 238, 239-40 (1972) (indicating that the notice to quit terminated the existing tenancy at will effective the date by which the sheriff notified the tenant to vacate the premises). The New Hampshire Supreme Court has explained that "a tenancy at will becomes a tenancy at sufferance on the effective date of a notice to quit." Hill v. Dobrowolski, 125 N.H. 572, 576 (1984).

In this case, the Eviction Notice issued on October 11, 2012, and provided that the Debtor must quit the premises by October 19, 2012, unless the Debtor cured the rent arrearage by that date. When that period elapsed, and the Debtor failed to cure the arrearage, the Debtor no longer had a right to cure the arrearage and maintain possession of the property. Accordingly,

the Court finds that, under applicable New Hampshire law, the Debtor's tenancy terminated effective October 19, 2012. After that date, a tenancy at sufferance followed. See id. ("[A] tenancy at sufferance can follow the termination of a conventional leasehold relationship. A 'tenant who, without any agreement, holds over after his term has expired, is a tenant at sufferance.'") (citations omitted).

  B. **Termination of the Lease**

While the Debtor's tenancy terminated pursuant to New Hampshire law effective October 19, 2012, the Court must next consider whether termination of the tenancy necessarily means the termination of the Lease within the meanings of §§ 362(b)(10), 541(b)(2) and 365(c)(3) of the Bankruptcy Code. During the evidentiary hearing, there was some argument as to whether termination of the Debtor's tenancy was synonymous or contemporaneous with termination of the Lease. Farmington has argued that the Lease is merely the "vehicle pursuant to which the terms of the 'tenancy' are stated." Doc. No. 53. The Debtor has argued that termination of the Lease is separate from termination of the tenancy. Doc. No. 51.

  The Court must examine the terms of the Lease itself with respect to its termination provisions. Leases governed by New Hampshire law may be terminated by their terms, as construed by New Hampshire contract law. See J.G.M.C.J. Corp. v. Sears, Roebuck & Co., 391 F.3d 364, 368 (1st Cir. 2004). Lease provisions should be given their plain meaning, unless there is ambiguity, in which case the meaning is a question of law for the courts to determine. Id. (citing N.A.P.P. Realty Trust v. CC Enters., 147 N.H. 137 (2001); Echo Consulting Servs., Inc. v. N. Conway Bank, 140 N.H. 566 (1995)); Hampton Beach Casino, Inc. v. Town of Hampton, 140 N.H. 785, 788-89 (1996). In interpreting a contract, the Court should give the

contract the interpretation which best reflects its reasonable meaning and the parties' intention when they executed the contract.    Echo Consulting, 140 N.H. at 569; see also Tommy Hilfiger Retail, Inc. v. N. Conway Outlets LLC, No. CIV. 99-C-147-B, 2000 WL 1480450, at *3 (D.N.H. Feb. 14, 2000); South Willow Props., LLC v. Burlington Coat Factory of New Hampshire, LLC, 159 N.H. 494, 501 (2009); accord Buber & Brideau v. Blais, 79 N.H. 516, 517 (1920) ("Although a demand was necessary at common law to terminate a lease for nonpayment of rent, that is not true when, as in this case, the lease provides that no demand shall be necessary.") (citing McQuesten v. Morgan, 34 N.H. 400, 405 (1857)).

  Looking at the terms of the Lease, it provides that, where there is a default, Farmington as the lessor has the right "to declare the term of this Lease ended."    Thus, the Lease requires Farmington, as lessor, to "declare" the term of the Lease ended.    Farmington did not make any express statement that the Lease was terminated.    Instead, Farmington contends that it implicitly declared the Lease ended by serving the Debtor with a Demand for Rent and an Eviction Notice on October 11, 2012, and proceeding with a summary possessory action pursuant to RSA 540.

  A "declaration" is "[a] formal statement, proclamation, or announcement, esp. one embodied in an instrument."    Black's Law Dictionary 467 (9th ed. 2009).    Farmington failed to make any "formal statement, proclamation or announcement" that the Lease was being terminated pursuant to § 15 of the Lease; it did not reduce any intent to terminate the Lease to writing.    For that reason, the Court finds that the Lease did not terminate in accordance with its written terms.

While Farmington did not follow the contractual provisions of the Lease with respect to termination, this is not the sole way the Lease could be terminated. The Lease could also have terminated as a matter of law. It is undisputed that Farmington followed RSA 540, which was enacted to "simplify and facilitate an owner's recovery of possession." Greelish v. Wood, 154 N.H. 521, 525 (2006) (referencing the predecessor to RSA 540). Farmington followed the process, outlined earlier in this opinion, all the way to the New Hampshire Supreme Court. Farmington served the Debtor with an Eviction Notice in October 2012. After the Debtor failed to cure the rent arrearage and vacate the premises, Farmington filed an eviction action in the Circuit Court. After a hearing, the Circuit Court rendered the Judgment ruling that Farmington could recover possession of the property. Prior to issuance of the writ of possession, the Debtor appealed the Judgment to the New Hampshire Supreme Court, which declined to hear the appeal. On June 11, 2013, the Circuit Court issued a Writ of Possession, which was served on the Debtor's manager on July 19, 2014. At the time the Debtor filed its chapter 11 bankruptcy petition, the Debtor's tenancy in the property had been terminated. The Debtor remained in possession of the property "without right." The Debtor was simply a tenant at sufferance who lacked any right to possession of the property. See Hill, 125 N.H. at 576 ("A tenancy at sufferance has been described generally as 'an interest in land which exists when a person who had a possessory interest in land by virtue of an effective conveyance, wrongfully continues in the possession of the land after the termination of such interest, but without asserting a claim to a superior title.'") (citations and quotations omitted). Because the Debtor lacked any interest in the property under the Lease in accordance with state law, and Farmington no longer had any obligations under the Lease, the Lease effectively terminated. By following the process

15

outlined in RSA 540, the Lease terminated as a matter of law prior to the commencement of this case.

### C. Lease as Executory Contract

Because the Lease was terminated at the time the Debtor filed bankruptcy, the Lease was not an executory contract capable of being assumed under the Bankruptcy Code. An executory contract is "[a] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." King et al., Collier on Bankruptcy ¶ 365.02[1] (15th rev. ed.1998) (quoting Countryman, Executory Contracts in Bankruptcy, 57 Minn. L. Rev. 439, 446 (1973)). Under New Hampshire law, a material breach of contract must go to the root or essence of the agreement between the parties, and a breach is material if when "a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions, the breach substantially defeats the contract's purpose, or the breach is such that upon a reasonable interpretation of the contract, the parties considered the breach as vital to the existence of the contract." Ellis v. Candia Trailers & Snow Equip., Inc., 164 N.H. 457 (2012) (quoting 23 Williston on Contracts § 63:3, at 438-39 (4th ed.) (emphasis omitted).

Giving the terms of the Lease their plain meaning, as required by New Hampshire contract law, the Debtor's material obligations under the Lease were that the Debtor would pay rent to Farmington on a timely basis, pay all expenses, maintain insurance on the property, and maintain the property. The material obligations of Farmington under the Lease were that Farmington would provide use and quiet enjoyment of the premises during the lease term. The

Debtor's breach of the Lease, and Farmington's exercise of its remedies under RSA 540, set in motion a process that effectively terminated the ongoing obligations of the parties to each other under the Lease. Accordingly, under the material breach test, the Lease is not an executory contract, and cannot be assumed by the Debtor in bankruptcy.

In arguing that Farmington's Motion should be denied, the Debtor invited the Court to extend the rationale in In re Beeman, 235 B.R. 519 (Bankr. D.N.H. 1999), to this case. In Beeman, chapter 13 debtors filed a bankruptcy petition after a foreclosure auction of their principal residence had concluded but before the foreclosure deed was recorded. The Beeman court held that the debtors still had a right to cure and reinstate their home mortgage pursuant to 11 U.S.C. § 1322(c)(1) following the foreclosure auction but before the foreclosure sale was completed by recording the foreclosure deed. The court explained that § 1322(c)(1) was added by the Bankruptcy Reform Act of 1994 and statutorily reversed the holding of In re Hazleton, 137 B.R. 560 (Bankr. D.N.H. 1992) (which had held that debtors no longer had any interest in property after a foreclosure auction), as applied to chapter 13 debtors. The court concluded that chapter 13 debtors have a federal interest in their principal residences up until the completion of the foreclosure process. The Debtor requests that the rationale of Beeman be extended to this case because, like the incomplete foreclosure process in Beeman, the eviction process has not been completed in this case and will not be completed until the Debtor is actually removed from the property by the sheriff.

The Court cannot extend the Beeman decision for two reasons. First, the Beeman decision rests on a statutory provision in chapter 13 that is not applicable in this chapter 11 case; the Debtor has not identified any federal interest, like that under § 1322(c)(1), that would allow

17

the Debtor to cure any defaults under the Lease in bankruptcy.   Second, the Beeman decision was criticized in a recent appellate decision, and therefore its precedential value may be limited. TD Bank, N.A. v. LaPointe (In re LaPointe), BAP No. 13-029, 2014 WL 702035, (B.A.P. 1st Cir. Feb. 24, 2014) (concluding that the debtor did not have any legal or equitable interest in property after a foreclosure auction was held even though the foreclosure deed had not been recorded prepetition).

**IV.   CONCLUSION**

For the reasons outlined above, the Court concludes that the Lease terminated—within the meaning of §§ 541(b)(2), 362(b)(10), and 365(c)(3)—under state law before the Debtor filed its chapter 11 bankruptcy petition on July 19, 2013.   Therefore any interest of the Debtor as lessee under the Lease did not become part of the Debtor's bankruptcy estate, and the automatic stay does not prohibit any act by Farmington to obtain possession of the property.   In addition, the Debtor has no ability to assume the Lease as it was terminated under applicable nonbankruptcy law prior to the order for relief.   Accordingly, the Court will grant the Motion, to the extent necessary, so that Farmington may conclude the process of evicting the Debtor from its property.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.   The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Date:   March 27, 2014                             /s/ Bruce A. Harwood
                                                   Bruce A. Harwood
                                                   Chief Bankruptcy Judge